## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Bobby Bruce White**,**

      Plaintiff,

v.                                                   Case No. 14-3004-JTM

Kansas Department of Corrections,
et. al,

      Defendants.

## MEMORANDUM AND OMNIBUS ORDER

By an order dated August 26, 2015, the court granted Mr. White thirty days from his receipt of the order to submit a second amended complaint clarifying his Eighth Amendment claim for inadequate medical care. On September 21, 2015, Mr. White requested an additional thirty days to file his second amended complaint. (Dkt. 33). Mr. White then filed a Second Amended Complaint on October 14, 2015 (Dkt. 34), and a pleading entitled "Affidavit and Memorandum for the Record" on October 20, 2015 (Dkt. 35). Since then, he has filed: 1) Motion and Objection to Process (Dkt. 36); 2) Motion for Summary Judgment (Dkt. 38), 3) Motion for Appointment of Legal Counsel and Injunction for the KDOC to Cease and Desist its Harassment, Reprisal & Discriminations (Dkt. 39), and 4) Affidavit for Preliminary Injunction and [Temporary Restraining Order] (Dkt. 41) and Addendum (Dkt. 42). The court addresses each in the order filed.

### I.      Letter to Court Clerk dated September 21, 2015 (Dkt. 33)

The court construes this letter as a motion for an extension of time. Because Mr. White filed it prior to the deadline to file the second amended complaint and Mr. White has filed his

Second Amended Complaint within the requested extension period, the court grants it and considers the Second Amended Complaint timely filed.

## II.       Second Amended Complaint (Dkt. 34)

Because Mr. White is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim upon which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). The court previously screened Mr. White's Amended Complaint (Dkt. 10), which contained six counts.[1] (Dkt. 17). The court dismissed all but Count 5, which contained Mr. White's claims concerning the failure to provide adequate medical care following his injuries during a cell extraction on March 1, 2013. (*Id.* at 7). After determining the allegations concerning the adequacy of the medical care provided to Mr. White were deficient, the court granted Mr. White time "to present a second amended complaint concerning *only that claim* and in compliance with the standards set out [in the order]." (*Id.* at 5, 7, emphasis added).

Contrary to the court's instructions, Mr. White presented a Second Amended Complaint that included claims other than for inadequate medical care, namely denial of access to the courts and retaliation. Mr. White also included allegations regarding events that occurred after the date of his initial complaint (January 16, 2014).

---

[1] Count 1 alleged harm arising from atypical conditions arising from the totality of conditions. Count 2 alleged plaintiff's rights were violated when his property was stolen by another prisoner in September 2012, and he was placed in segregation, denied restitution for the property, denied information on the identity of the thieves, and denied possession of his remaining property. Count 3 alleged deliberate indifference, reckless disregard, and malicious intent by officials who allowed other prisoners and unit officers "to harass and terrorize the plaintiff in an aberrated form of 'scared straight.'" Count 4 alleged reckless disregard and deliberate indifference by officials who failed to personally identify officers who assaulted him on March 1, 2013, during a cell extraction. Count 5 alleged that after the cell extraction, he was denied medical care for leg and ankle injuries, chronic care medication, eyeglasses, and pain medication, while being held in harsh conditions in isolation. Count 6 alleged a failure to expedite his two emergency grievances.

To add claims or defendants that were not previously raised in a complaint, a plaintiff must follow Rules 15 and 18 of the Federal Rules of Civil Procedure. Rule 15, in pertinent part, provides a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). This means a party must first seek leave to amend by filing a motion that is accompanied by a proposed amended complaint. The federal rules require a plaintiff to attach a proposed amended complaint because an amended complaint supercedes the prior complaint and any claims not included in the amended complaint will not be considered.

Rule 18 provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18. While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F.Supp.2d 1210, 1225 (D. Kan. 2001) (citation omitted). Unrelated claims against different defendants belong in different suits. Courts require adherence to this rule in prisoner suits because it prevents prisoners from "dodging" the fee obligation and the three strikes provisions of the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Mr. White did not first obtain the court's leave to add claims for denial of access to the courts and retaliation. However, because Rule 15 states that leave shall be freely given, the court grants Mr. White leave to assert claims for denial of access to the courts and retaliation so long as they are based on the facts related to the March 2013 cell extraction incident. Claims based upon unrelated subsequent events are improper and will not be considered in this case.

**Allegations and Claims**

Like the Amended Complaint, the Second Amended Complaint contains six counts. Unlike the Amended Complaint, each count in the Second Amended Complaint asserts similar claims, but against different defendants. In Count 1, Mr. White alleges Kansas Department of Corrections (KDOC) officials failed to supervise their employees, failed to follow KDOC policies and procedures, and implemented policies so deficient that "[they] are a repudiation of constitutional rights." (Doc. 34 at 6). He claims that these acts resulted in the denial of his right to adequate medical care and court access. *Id.*

In Count 2, Mr. White alleges multiple KDOC employees were deliberately indifferent and denied him adequate medical care and access to the courts by, among other things: 1) ignoring his requests for medical care and to make "sick calls," 2) taunting and making fun of his injuries, 3) mishandling his grievances, and 4) using inmates to harass and threaten him in an aberrated model of the "scared straight" program. (*Id.* at 9-11). He claims "their only motive for denying [him] medical care was to cover up the incident, by waiting it out till [sic] [he]was completely healed . . . [so there would be] no proof or evidence of the injuries." (*Id.* at 10).

In Count 3, Mr. White alleges Correct Care Solutions (CCS), the contract medical care provider for the KDOC, failed to provide timely and adequate medical care to him after he received the injuries on March 1, 2013. He further alleges that CCS failed to properly train, supervise, or monitor its employees regarding KDOC's policy on prisoner hunger strikes. (*Id.* at 12). In Count 4, Mr. White alleges Corizon Medical (Corizon), KDOC's contract medical care provider as of January 2014, also failed to provide him adequate medical care. He alleges that Corizon failed to immediately implement the treatment plan prescribed by Dr. Pat Do, that the Corizon pill nurse retaliated against him by writing him up for refusing medication, and that she

4

denied him access to the TENS unit. These incidents allegedly occurred between March 2015 and July 2015.

In Count 5, Mr. White alleges Dr. C. Gordon Harrod, KDOC's chief medical officer, denied him adequate, timely, and competent medical care by, among other things: 1) ordering his placement in "Mental Health" isolation without first reviewing his past and most recent medical history, 2) refusing to follow the treatment plan prescribed by Dr. Pat Do, 3) refusing to recommend him to see Dr. Morgan, and 4) refusing to order or provide follow-up examinations. Mr. White also alleges Dr. Harrod retaliated against him by refusing him access to the TENS medical unit to relieve his leg and back pain. In Count 6, Mr. White alleges that multiple mental health workers were deliberately indifferent to his medical needs by failing to timely or routinely check on his mental and physical condition.

Mr. White seeks the following relief: 1) a declaration that defendants have violated his constitutional rights; 2) a permanent injunctive order directing the KDOC and Corizon to cease their physical violence and threats against him; 3) compensatory damages of $ 50,000 against each defendant; 4) punitive damages of $ 50,000 against each defendant; 5) costs for attorney's fees and expenses; and 6) future costs for long-term medical care. (Dkt. 34 at 25).

**Analysis**

On September 16, 2014, this court entered an order screening the Amended Complaint and found that the allegations concerning the adequacy of the medical care provided to Mr. White in and around March 2013 were deficient. (Dkt. 17 at 5). The court advised Mr. White that "[p]ersonal participation is an essential [allegation] in a civil rights complaint," and that he must explain what each defendant did to him, when the defendant did it, how the defendant's action harmed him, and what specific legal right he believes the defendant violated. After reviewing all

the materials filed, the court finds that the Second Amended Complaint is subject to dismissal for the following reasons.

**1. Inadequate medical care**

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). With regard to the subjective component, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent ... diagnos[is]' simply fail to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). As the Supreme Court noted in *Estelle*, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105–6.

Mr. White's allegations set out his disagreement with the medical care provided. Even if Mr. White could meet the objective component of the deliberate indifference standard, his pleadings fail to allege facts suggesting that any of the defendants acted with the state of mind required to meet the subjective or intent component of the standard. For the foregoing reasons, the court finds Mr. White states no actionable constitutional claim. Even if he had, the court finds that each individual count is deficient or barred on other grounds.

2.  **Count 1 – Claims against state officials**

Count 1 perishes under the Eleventh Amendment and the personal participation rule. The Eleventh Amendment bars a claim for damages against a state agency, or any state official acting in his or her official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) (neither state nor its officials acting in their official capacities are 'persons' under § 1983). Additionally, liability under § 1983 requires personal participation. Mr. White has failed to allege specific misconduct by the state officials.

Mr. White's claims against UTM Martin, Warden James Heimgartner, and Secretary of Corrections Designee Douglas W. Burris are based on respondeat superior and their alleged failure to give him relief through the administrative grievance process. (Dkt. 34 at 6). Mr. White makes no allegation of personal participation by these defendants other than identifying them as responsible for operation of the facility and supervision of all KDOC employees, or as denying his administrative appeals. It is well established that "§ 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The Tenth Circuit has also repeatedly held that the denial of administrative grievances or appeals alone is insufficient to establish personal participation. *See Larson v. Meek*, 240 Fed.Appx. 777, 780 (10th Cir. 2007); *Walters v. Corrections Corp. of America*, 119 Fed. Appx. 190, 191 (10th Cir. 2004) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance"); and *Sims v. Miller*, 5 Fed. Appx. 825, 828 (10th Cir. 2001) ("insofar as plaintiff contended that [prison] officials had failed to comply with the prison

grievance procedures, he had failed to allege the violation of a federal constitutional right"). Because the claim against these defendants fails to state an actionable claim under § 1983, the court dismisses Count 1.

### 3. Count 2 – Claims against KDOC employees

In Count 2, Mr. White identified several individual KDOC employees, but none of them were alleged to have been involved in the cell extraction or the medical care provided to him in March 2013. Instead, he described a slew of "minor petty harassment incidents" (Dkt. 34 at 11) that occurred between June 14, 2013 and September 30, 2015.[2] As far as the court can discern, only the allegations involving CC Thomas and UTM Watson have some relation to the cell extraction incident. Mr. White alleged that he gave Thomas an emergency grievance dated March 11, 2013, and she forwarded it to UTM Watson. He claims this grievance disappeared and went unanswered.

Mr. White, however, has no freestanding constitutional right to a state administrative grievance procedure. *See e.g. Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991) (an inmate's rights are not per se compromised by the prison's refusal to entertain his grievances). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Walters v. Corrections Corp. of America*, 119 Fed.Appx. 190, 191 (10th Cir. 2004) (*citing Flick* ), *cert. denied*, 546 U.S. 865

---

[2] CO Moore allegedly refused to let plaintiff get ice; CO Gault allegedly interrupted plaintiff's law library time; CO Webb allegedly refused to allow plaintiff to wear his prescribed shoes; CO Haubenstein allegedly repeatedly accused plaintiff of purposefully falling down the stairs; and CO Repstine allegedly refused to assist plaintiff when he was threatened by a unit porter.

(2005). Because Mr. White has no such protected interest in the Kansas administrative grievance process, the interference he alleges by Thomas and Watson is not an actionable constitutional claim.

Additionally, Mr. White's averments in Count 2 fail to identify a KDOC employee who knowingly disregarded an excessive risk to his health. *See Farmer v. Brenan*, 511 U.S. 825, 845-46 (1994). Because Mr. White has not alleged adequate personal participation in unconstitutional acts on the part of CC Thomas, UTM Watson, CO Moore, CO Gault, CO Webb, CO Haubenstein, and CO Repstine, the court dismisses Count 2.

## Count 3 – Claims against CCS

A private corporation performing a government function can be held liable under § 1983 only where a plaintiff shows "1) the existence of a . . . policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993); *Smedley v. Corrs. Corp. of Am.*, 175 Fed. App'x 943, 946 (10th Cir. 2005) (applying § 1983 standards for municipal liability to a corporation performing a government function). A policy is a formal statement by the private corporation. *See Gates v. Unified School Dist. No. 449 of Leavenworth County, Kan.*, 996 F.2d 1035, 1041 (10th Cir.1993). A custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation. *Id.* A corporation cannot be held liable under the doctrine of respondeat superior for the individual actions of its employees. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (state prison medical department not a "person" under § 1983); *Green v. Rubenstein*, 644 F.Supp.2d 723, 738 (S.D.W.Va. 2009); *Dudley v. Food Service-Just Care*, 519 F.Supp.2d 602, 604 (D.S.C. 2007).

A claim of constitutional deprivation by a private entity such as CCS requires sufficient facts to plausibly find the deprivation of Mr. White's constitutional rights was pursuant to policy or custom of the private entity. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Dubbs v. Head Start, Inc*., 336 F.3d 1194 (10th Cir. 2003). Mr. White's bare reference to the hunger strike policy and his allegations regarding the failure to train as to that policy are conclusory. Moreover, Mr. White has not sufficiently alleged that the deprivation of medical care in his case violated his constitutional rights. Simply put, the Second Amended Complaint presents no viable claim for relief under § 1983 against CCS. *See Conley v. McKune*, No. 11-3200-SAC, 2012 WL 3637749, at *6 (D. Kan. Aug. 23, 2012), *aff'd in part sub nom*., *Conley v. Pryor*, 627 F. App'x 697 (10th Cir. 2015). Accordingly, the court dismisses Count 3.

### 4. Count 4 – Claim against Corizon Medical

Like CCS, Corizon is also not a "person" suable under 42 U.S.C. § 1983. Additionally, because Mr. White's factual allegations against Corizon only reference events in October 2014 and 2015, they are unrelated to the March 2013 cell extraction. His broad reference to Corizon replacing CCS is insufficient to state a claim against it. *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir.1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). For these reasons, the court dismisses Count 4.

### 5. Count 5 – Claims against Dr. Harrod

A prisoner's right is to medical care, not to the type or scope of medical care he personally desires. A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual treatment.  *See Estelle*, 429 U.S. at 106-07; *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (A difference of opinion between a physician and a patient or even between two medical

providers does not give rise to a constitutional right or sustain a claim under § 1983.); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).  Even if Mr. White were to prove that Dr. Harrod's medical judgment was unsound or that the alternative treatment he received or was offered was ineffective, these allegations amount to no more than a claim of negligence. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir.1997) (citing *Estelle*, 429 U.S. at 106). The court concludes that Mr. White has failed to state an Eighth Amendment claim against Dr. Harrod. Accordingly, the court dismisses Count 5.

### 6.  Count 6 – Claims against mental health workers

The court dismisses Count 6 for failing to provide sufficient information to determine the mental health workers involved in failing to treat his injuries from the March 2013 cell extraction. The Tenth Circuit recognizes "the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." *Roper v.. Grayson*, 81 F.3d 124, 125 (10th Cir. 1996). Mr. White describes no acts by John or Jane Doe, and has provided no information that would allow service upon these unnamed defendants. Mr. White was plainly informed in the court's prior screening order that conclusory allegations were insufficient and that he must allege facts showing each defendant's personal participation. Accordingly, the court dismisses Count 6.

III.    **Affidavit and Memorandum for the Record (Dkt. 35)**

Since filing the Second Amended Complaint, Mr. White has submitted numerous additional documents. One filing (Dkt. 35) contained proof regarding his representations as to the current conditions of his incarceration in the form of two grievances, both dated September 7, 2015. This is an improper filing. The court advises Mr. White that it is not appropriate for him to submit evidence until his complaint has survived screening and the time has come for him to provide proof of his allegations.

Additionally, the court advises Mr. White that it will not consider claims, allegations, or documents that are unrelated to the claims in the Second Amended Complaint. Mr. White did not assert a conditions-of-confinement claim in the Second Amended Complaint. Moreover, Mr. White may not add this claim by simply making bald allegations in a pleading. As stated earlier, to add claims or defendants that were not previously raised in a complaint, a plaintiff must follow Rules 15 and 18.

The court notes that the cell extraction incident occurred at Larned Correctional Mental Health Facility in March 2013, while the September 7, 2015 grievances were at El Dorado Correctional Facility. Because they are temporally remote and insufficiently related, the court finds any claims based on the September 7, 2015 grievances separate from the claims raised in the Second Amended Complaint. If Mr. White wants the court to consider a conditions-of-confinement claim, he must file a separate complaint against the person or persons responsible for any such unconstitutional acts and set forth facts supporting those claims. Under 28 U.S.C. § 1915, Mr. White will be held responsible for paying court fees for each civil complaint he files.

In sum, the court will disregard Dkt. 35. The court directs Mr. White to refrain from submitting improper motions and papers. By submitting a continuous stream of improper filings,

12

Mr. White unnecessarily impairs the court's resources and impedes the orderly processing of this and other actions. This court will not consider and will strike without further discussion.

## IV.   Motion and Objection to Process (Dkt. 36)

In this 10-page pleading, Mr. White objects to "the unconstitutional requirements placed on [him] by the Court and KDOC, because of the condition of encarceration [sic] and lack of enforcement [by] the Court to the KDOC's violations to abide by the Court's Standing Order 12-2 [relating to prison electronic filing]…" (Dkt. 36 at 1). He also objects to the court's refusal to appoint legal counsel to represent him. He claims that KDOC officials have purposefully attempted to sabotage and prejudice both his civil and habeas suit by failing to obey and follow Standing Order 12-2, which has "unfairly and unconstitutionally denied [him] the right to access to the court …" (*Id.* at 3). He requests the court: 1) direct the court clerk to modify its administrative procedure to manage the e-filing of prisoners, especially those in segregation and isolation, and 2) appoint legal counsel to assist him. (*Id.* at 7).

A cursory review of Mr. White's filings herein and court records of his prior federal cases discloses that his claim of being denied access to the courts lacks merit. On page 5 of this pleading, Mr. White listed all of the documents he attempted to e-file. The court electronically received these documents, some more than once. Accordingly, the court denies Mr. White's request to modify the court's e-filing rules for prisoners.[3]

As to appointment of counsel, Mr. White has no right to the assistance of counsel in this civil action, *Durre v. Dempsey*, 869 F.2d 543, 647 (10th Cir.1989), and he has ably demonstrated his ability to present his claims and address legal issues thus far. *See Long v. Shillinger*, 927 F.2d

---

[3] Plaintiff's reliance upon Standing Order 12-2 is misplaced. It was a pilot project introduced to reduce the costs of court filings by prisoners in civil cases by reducing associated expenses for paper, envelopes, copying and postage for prison litigants, effective June 1, 2012 through February 2013.

525, 526–27 (10th Cir.1991) (factors to be considered in deciding motion for appointment of counsel). Accordingly, the court denies Mr. White's request for appointment of counsel.

## V.      Motion for Summary Judgment (Dkt. 38)

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court finds Mr. White's request for summary judgment premature because he filed it before the court determined whether the Second Amended Complaint would survive screening and before defendants have been served with a summons. Additionally, the court has now determined that the Second Amended Complaint should be dismissed. For these reasons, the present record is not suitable for summary judgment. Accordingly, the court denies Mr. White's motion for summary judgment.

## VI.     Motion for Appointment of Legal Counsel and Injunction for the KDOC to Cease and Desist its Harassment, Reprisal & Discriminations (Dkt. 39)

In this pleading, Mr. White requests the appointment of counsel and an order directing the "KDOC to cease its harassments, reprisals and discriminations against him." (Dkt. 39 at 1). This is Mr. White's third request for appointment of counsel in this case. For the reasons previously stated, the court denies it.

A party seeking a preliminary injunction must demonstrate four factors: 1) a substantial likelihood of success on the merits; 2) irreparable harm to the movant if the injunction is denied; 3) the balance of equities tips in the movant's favor; and 4) the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone*

14

*Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003) (citation omitted). The court finds plaintiff has not met these standards.

In support of his request for an injunction, Mr. White alleges that: 1) he has been transferred nine times in the past year, with each transfer resulting in damaged or missing property; 2) KDOC unit team members have continually refused to provide him with the necessary paperwork to report missing or damages to his personal property; 3) the facility administration has failed to answer his Form 9 grievances; 4) the KDOC has failed to follow its own Internal Management Policy and Procedures; 5) he has been forced to wear the same jumpsuit and undergarments for over 22 days since his transfer to LCF on January 12, 2016; 6) he was injured on January 23, 2016, when he slipped on ice due to KDOC's failure to provide him with a cane; 7) the KDOC intentionally moved him to a facility that requires him to walk outside during bad weather; and 8) the KDOC continues to deny him access to the court and adequate medical care. Most of these allegations are unrelated to Mr. White's claims for the March 2013 cell extraction. Thus, the court will not consider them. The remaining allegations are conclusory.

In sum, Mr. White does not persuasively identify any irreparable injury he might suffer absent the relief sought, and the specific relief sought clearly impacts prison management, which is generally afforded great deference. *See Hewitt v. Helms*, 459 U.S. 460 (1983) (broad discretion is afforded prison officials in their day-to-day management of correctional facilities); *Rhodes v. Chapman*, 452 U .S. 337, 349 n. 14 (1981) (prison administrators are to be accorded substantial deference regarding matters of internal security and management of a correctional facility). Accordingly, the court denies Mr. White's motion for a preliminary injunction.

**VII.    Motion for Preliminary Injunction and TRO (Dkt. 41) and Addendum & Memorandum of Law to [Dkt. 41] (Dkt. 42)**

The court finds this motion duplicative of Dkt. 39. It requests the same injunctive relief but alleges that EDCF has been holding him in isolation and segregation without justification for most of the later months of 2015 and that LCF denied him his property during his transfer to the medium security camp on or about February 10, 2016. Mr. White also filed a 10-page addendum (Dkt. 42), which mainly complains about his loss of electronic privileges due to his return to Level I status. He argues that LCF officials are required to properly care and store or return his property (a television, radio and clock) to him. He suggests that this injunction will serve the public interest by saving tax dollars to replace his personal property. For the same reasons the court denied Dkt. 39, the court denies this motion.

It appears that Mr. White believes that the filing of this case gives him license to file one pleading after another to complain about each and every subsequent perceived denial of his rights. It does not. If Mr. White wants the court to consider these separate claims (*i.e.*, illegal transfers, age discrimination, unjustified segregation or isolation), he must file a separate complaint against the person or persons responsible for any such unconstitutional acts, set forth facts supporting those claims, and pay court fees for each civil complaint he files.

**IT IS THEREFORE ORDERED** that Mr. White's request for an extension of time (Dkt. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Mr. White's Motion and Objection to Process (Dkt. 36), Motion for Summary Judgment (Dkt. 38), Motion for Appointment Counsel (Dkt. 39), and Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. 41) are **DENIED**.

**IT IS FURTHER ORDERED** that this action is dismissed.

**IT IS SO ORDERED** this 12th day of April 2016.


s/ J. Thomas Marten
J. THOMAS MARTEN, Judge